RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 23 2017

JAMES N. HATTEN, Clerk
By: S. Brar, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WAYNE H. NORMAN<br><br>Plaintiff,<br><br>v.<br><br>RADIO ONE, ATLANTA, LLC<br>d/b/a WHTA HOT 107.9 FM<br><br>Defendants. | Civil Action File No.<br><br>1:17-CV-0275 |

## ORIGINAL COMPLAINT

NOW COMES the Plaintiff, WAYNE H. NORMAN, by and through himself and for his Complaint against the Defendant, RADIO ONE ATLANTA, LLC D/b/a WHTA HOT 107.9 FM, and Plaintiff states as follows:

## NATURE OF THIS ACTION

1. Plaintiff brings this action for statutory damages arising out of and relating to the conduct of Defendants whom negligently, knowingly, and/or willfully contacted Plaintiff on behalf of WHTA Hot 107.9 FM on his cellular telephone without his prior express written consent within the meaning of the TCPA. This is an action for statutory damages for violations of the Telephone Consumer Protection Act (hereinafter, "TCPA"), 47 U.S.C. section 227 *et seq.*[1]

## JURISDICTION & VENUE

2. Jurisdiction arises under the TCPA, pursuant to 28 U.S.C. sections 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. WAYNE H. NORMAN, (hereinafter, Plaintiff) is a natural person at all relevant times residing in county of Cook, State of Illinois.

5. RADIO ONE ATLANTA, LLC, d/b/a WHTA HOT 107.9 FM (hereinafter, "Defendant"), is FM Radio Station with an office located at 101 Marietta, ST 12th Floor, Atlanta, Ga. 30303.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) 47 U.S.C §227

6. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

7. The TCPA regulates, inter alia, the use of automated telephone equipment, or "predictive-dialers", defined as equipment which "has the capacity…(a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers. 47 U.S.C. § 227(a)(1).

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

8. Per findings by the Federal Communications Commission (FCC), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

9. The Defendants has sent out millions, if not billions of unlawful text messages (also known as "SMS Messages") in violation of the TCPA.

10. Defendants has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently must pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

---

[2] 47 U.S.C. § 227 (b)(1)(A)(iii). [3] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

11. To redress these injuries, Plaintiff brings this suit under the TCPA which specifically prohibits unsolicited voice and text calls to cell phones without prior express written consent.

## A BRIEF OVERVIEW OF TEXT MESSAGING

12. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

13. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-150 characters.

14. An "SMS message" is a text message call directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

---

[3] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

15. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can cost their recipients money, because cell phone users must frequently pay their respective wireless service providers for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether the message is authorized.

16. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

17. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

18. Text messages are "calls" within the purview of the TCPA. *See Satterfield v Simon & Schuster, Inc.*, 569 F.3d (9th Cir. 2009).

## **VICARIOUS LIABILITY**

19. The Federal Communications Commission (FCC) has issued a Declaratory ruling governing when a company is liable under the Telephone Consumer Protection Act (TCPA), and FCC telemarketing and autodialing rules, for violations committed by a third party that the company authorizes to sell its goods

or services but does not directly ask or otherwise engage in telemarketing, by holding that the company may be vicariously liable under federal common law principles of agency for TCPA violations that the third party commits.

20. The declaratory ruling clarifies that such a company, *i.e.*, the "seller" in TCPA parlance, is not directly liable unless it initiates the non-compliant call, but may be vicariously liable "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." The FCC recognized that a seller can concurrently be a telemarketer and thus be directly liable for non-compliant calls – *e.g.*, when it initiates a call on its own behalf, or when it is intrinsically involved in specific calls by third parties by, *e.g.*, giving them specific and comprehensive instructions as to calls' timing, manner, etc. However, beyond that, actions taken to benefit a seller by a third party, without more, do not trigger TCPA liability for the seller.

21. The FCC held, sellers may be liable for non-compliant conduct by third parties marketing the seller's goods or services, if the seller is aware of "ongoing conduct encompassing numerous acts" by the third party, and the seller fails to terminate the third party and/or promotes or "celebrates" the third party's conduct. In that circumstance, the seller has the ability, through its authorization to the third party, to oversee the conduct, even if that supervisory power is unexercised. In such

cases, liability is determined based on "general common law" agency-related principles, rather than the law of any state, though it is not limited to classical agency principles, but rather also includes apparent authority and ratification as bases for vicarious seller liability.

## ALLEGATIONS OF FACT

22. On or around summer of 2012, Plaintiff was at an event sponsored by the Defendant ROAHOT.

23. A representative told Plaintiff about occasional cash winnings offered that most of the 'public' didn't know about and to gain access to such winnings, you could text "HOT" to 71007 and text the word 'win' and you could receive a chance to win money.

24. Plaintiff asked when the next drawing or giveaway was. She replied, "next week." Plaintiff agreed and texted 71007, to receive the winning code. Shortly afterwards, Plaintiff received a confirmation code.

25. After the event, Plaintiff continued to receive solicitation sales text messages from the Defendant from code number 71007 to his cellular number without his consent.

26. Defendant, ROAHOT, advertises on its website that consumers will receive up to Seven (7) SMS messages per week.

27. Upon information and belief, all solicitation text messages Plaintiff received were transmitted by the Defendant ROAHOT.

28. The FCC's Declaratory Order gave all companies until October 16, 2013, to obtain "**prior express written consent**" before making a telemarketing call to a wireless number using an automated dialing system or an artificial or prerecorded voice, or before calling a residential line using such a voice to deliver the message." Further, the FCC interprets text messages to be "calls" under the TCPA; therefore, prior express written consent is required for both calls and texts.[4]

29. The Defendant never contacted Plaintiff to obtain her prior expressed written consent to receive any telemarketing calls to her wireless number.

30. Upon information and belief, the Defendant utilized a predicative dialer to place the phone calls to Plaintiff without human intervention. Defendant's equipment qualifies as a predictive dialer because it is equipment, combining software and hardware aspects, that has the capacity to store or produce numbers and dial those numbers at random or sequential order, or from a database of numbers.

31. Plaintiff has received at least ninety-one (91) unsolicited text messages from the Defendant since October 16th, 2013.

---

[4] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, (FCC Report and Order), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2012 WL 65485 (F.C.C.) (Feb 15, 2012).

32. Plaintiff suffered harm and damages in the form of text message, data, and other charges to his cellular telephone plan.

## QUESTIONS OF LAW

33. Questions of law and fact include, but are not limited to, the following:

a. Whether Defendant's conduct is governed by the TCPA;

b. Whether the mobile spam sent by Defendants violated the TCPA;

c. Whether Defendants conduct was knowing and/or willful;

d. Whether Defendant is liable for damages and the amount of such damages.

## COUNT I-TCPA
## KNOWING AND/OR WILLFUL VIOLATIONS
## OF THE ("TCPA"), 47 U.S.C. SECTION 227, ET SEQ.

34. The Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

35. Without prior express written consent, the Defendant contacted the Plaintiff on behalf of WHTA Hot 107.9 ninety-one (91) times by means of automatic text messaging to a cell phone or pager in violation of 47 U.S.C. §227(b)(1)(A)(iii).

36. Because of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each call-in violation of the statue, pursuant to 47 U.S.C. § 227(b)(3).

37. An award of all fees and costs incurred by Plaintiff.

## PRAYER FOR RELIEF COUNT I

38. Assessing against the Defendant damages of $1,500 for each of the ninety-one (91) violations of the TCPA found by the Court to have been committed by the Defendant willfully and knowingly; if the Court finds The Defendant has engaged in violations of the TCPA which are not willful and knowing, then assessing against the Defendant, damages of $500 for each violation of the TCPA, as provided by 47 U.S.C. §227.

Respectfully submitted,

Wayne H. Norman

3010 Finley Drive

Downers Grove, Illinois 60515

whnorman@hotmail.com